# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3241

_____

United States of America

*Plaintiff - Appellee*

v.

Charles Kenneth Mulverhill

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: June 17, 2016
Filed: August 16, 2016

_____

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Charles Mulverhill pleaded guilty to one count of failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a) and was sentenced to 57 months' imprisonment. On appeal, Mulverhill argues that the district court plainly erred[1] in

_____

[1]Mulverhill concedes that he failed to object in the district court to the purported errors that he now raises.

(1) accepting his guilty plea based on an erroneous classification of him as a Tier III sex offender under the Sex Offender Registration and Notification Act (SORNA), and (2) calculating his total offense level based on an inadvertent error in the presentence investigation report (PSR). We affirm the district court's acceptance of Mulverhill's guilty plea. However, we vacate Mulverhill's sentence and remand for resentencing based on our conclusion that Mulverhill was "sentenced under an incorrect Guidelines range" due to the PSR error and that such error is "sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).

## I. *Background*

On December 26, 1989, Mulverhill was convicted of two counts of lewd and lascivious acts with a child under 14 years old, in violation of § 288(a) of the California Penal Code, and sentenced to 272 days in custody and 6 years of probation. On March 14, 1990, Mulverhill registered as a sex offender upon his release from jail in California. On May 14, 2001, he moved to Arizona and continually maintained his registration status until September 4, 2012. In June 2014, Mulverhill moved to Springfield, Missouri, but he never registered as a sex offender in Missouri.

On April 2, 2015, Mulverhill was charged with failure to register as a sex offender "[b]etween June 19, 2014, and January 30, 2015," in violation of 18 U.S.C. § 2250(a). The indictment provided notice to Mulverhill that upon conviction he would receive no more than ten years in prison. Mulverhill subsequently pleaded guilty to the charge. During the change-of-plea hearing, the district court advised Mulverhill that "[t]he authorized punishment for th[e] offense as established by the Congress is not more than ten years' imprisonment," and Mulverhill confirmed that he was "aware that's the authorized punishment for the offense." The district court also asked the government to "recite the evidence that the government thinks [it] could present if [Mulverhill] chose to go to trial" and advised Mulverhill to "listen carefully" to the evidence. The government stated that, as a result of his prior

California sex-offense conviction, Mulverhill was required to register under SORNA; but, as of January 29, 2015, neither the Greene County, Missouri Sheriff's Office nor the Missouri State Highway Patrol had any record of Mulverhill ever having registered as a sex offender. The government further stated that "[u]pon his arrest in this case, Mr. Mulverhill admitted to law enforcement officers that he had had a qualifying conviction in his background, acknowledged his obligation to register and that he had lived in Missouri since at least March of 2014 but had failed to register as required." After the government completed its recitation of the factual basis for the plea, Mulverhill confirmed to the district court that nothing said was "inaccurate" and that he was guilty of the described conduct.

Following the entry of Mulverhill's guilty plea, the district court ordered the preparation of the PSR. The PSR recommended a base offense level of 16 pursuant to U.S.S.G. § 2A3.5(a)(1) because the offense involved "failure to register as a [Tier III] sex offender." (Alteration in original.) The PSR recommended an eight-level enhancement under U.S.S.G. § 2A3.5(b)(1)(C) for committing a sex offense against a minor (S.L.M) while in a failure-to-register status. The PSR additionally recommended that Mulverhill receive a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), resulting in a total offense level of 21. Mulverhill did not have any criminal history points, resulting in a criminal history category of I. The PSR, however, mistakenly stated later in the document that Mulverhill's "total offense level" was "23" and that based on that offense level and a criminal history category of I, his Guidelines range was 46 to 57 months' imprisonment. Mulverhill did not object to this portion of the PSR prior to sentencing.

At sentencing, the district court stated, "The [PSR] concludes an offense level of 23 and a criminal history category of one." Mulverhill objected only to the PSR's recommended eight-level enhancement for committing a sex offense against a minor. The government then put on evidence in support of the enhancement. Deputy United

States Marshal Anthony Cable testified that a flash drive contained text messages between S.L.M., a 14-year-old girl, and Mulverhill. Several text messages from S.L.M. stated that she wanted to have sex with Mulverhill. In response to one of her texts, Mulverhill wrote, "I know, luh [sic] you." In other messages, S.L.M. expressed her hope that she was not pregnant, and Mulverhill replied that he also hoped that she was not pregnant. Mulverhill directed S.L.M. to erase all of her e-mails. Deputy Cable also reviewed photographs of S.L.M. on Mulverhill's cell phone, which showed S.L.M. clothed and sleeping on a bed. Deputy Cable testified that a report from the Missouri Department of Social Services, Children's Division, contained an interview of Mulverhill in which he said that S.L.M. sometimes slept in his bed and that he knew it was inappropriate. Deputy Cable read excerpts from S.L.M.'s statement in which she described how Mulverhill had intercourse with her and sexually abused her in other ways.

At the conclusion of the evidence, the district court overruled Mulverhill's objection to the eight-level enhancement. The court concluded that the total offense level was 23, applied a criminal history category of I, and calculated an advisory Guidelines range of 46 to 57 months. Mulverhill did not object to this calculation. The government argued that the sentence should be at least 57 months' imprisonment and stated that an upward variance would be appropriate. Mulverhill asked the court to grant a downward variance from the Guidelines range or, alternatively, for a sentence on the low end of the Guidelines range.

In rendering Mulverhill's sentence, the court commented that

[h]ad [S.L.M.'s] mother not known and had S.L.M. not known of your situation as someone required to register, I think I would have exceeded the guidelines. I would have gone above the guidelines. But since they knew and the mother allowed you to live there anyw[ay] and shut her eyes as to what was going on, I can't really blame the failure to register for what occurred.

The court ultimately imposed a sentence of 57 months' imprisonment, the high end of the advisory range, and supervised release for life.

## II. *Discussion*

On appeal, Mulverhill argues that the district court plainly erred in (1) accepting his guilty plea based on an erroneous classification of him as a Tier III sex offender under SORNA, and (2) calculating his total offense level based on an inadvertent error in the PSR.

To prevail under plain-error review, Mulverhill "must show: (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Brave Bull*, No. 15-2143, 2016 WL 3671702, at *2 (8th Cir. July 11, 2016) (citation omitted). "[I]t is enough that an error be 'plain' at the time of appellate consideration." *United States v. Fast Horse*, 747 F.3d 1040, 1042 (8th Cir. 2014) (quoting *Henderson v. United States*, 133 S. Ct. 1121, 1130–31 (2013); citing *United States v. Webster*, 84 F.3d 1056, 1067 (8th Cir. 1996) ("[T]he proper focus is the law applicable on appeal rather than at trial.")).

> In the absence of controlling precedent of either this court or the Supreme Court, the district court is granted more discretion under the plain error standard simply because the less guidance there is, the smaller the realm of decisions that would be clearly or obviously wrong under current law.

*United States v. Lachowski*, 405 F.3d 696, 698 (8th Cir. 2005).

A. *Guilty Plea*

We first address whether the district court plainly erred in accepting Mulverhill's plea of guilty to failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a). "SORNA classifies sex offenders into three tiers with each category corresponding to specific, enumerated crimes or to offenses incorporated from other federal sexual abuse laws." *United States v. Morales*, 801 F.3d 1, 3 (1st Cir. 2015).[2] Tier III concerns "[t]he most egregious offenders." *Id*. (citing 42 U.S.C. § 16911(4)(A)). It provides, in relevant part, that

> [t]he term "tier III sex offender" means a sex offender whose offense is punishable by imprisonment for more than 1 year and—
>
> > (A) is comparable to or more severe than the following offenses, or an attempt to commit such an offense:
> >
> > > (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18); or
> > >
> > > (ii) abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years . . . .

42 U.S.C. § 16911(4)(A).

Similarly, a "tier II sex offender" is defined, in relevant part, as

---

[2]"These tier levels are incorporated into the United States Sentencing Guidelines and used to determine the defendant's base offense level." *United States v. Taylor*, 644 F.3d 573, 576 (7th Cir. 2011) (citing U.S.S.G. § 2A3.5).

a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year and—

(A) is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense against a minor:

(i) sex trafficking (as described in section 1591 of Title 18);

(ii) coercion and enticement (as described in section 2422(b) of Title 18);

(iii) transportation with intent to engage in criminal sexual activity (as described in section 2423(a)) of Title 18;

(iv) abusive sexual contact (as described in section 2244 of Title 18) . . . .

42 U.S.C. 16911(3)(A).

"The final category, Tier I, serves as a catch-all provision for convicted sex offenders not otherwise grouped into Tier II or Tier III." *Morales*, 801 F.3d at 3 (citing 42 U.S.C. § 16911(2)). A sex offender must keep his or her registration current for "(1) 15 years, if the offender is a tier I sex offender; (2) 25 years, if the offender is a tier II sex offender; and (3) the life of the offender, if the offender is a tier III sex offender." 42 U.S.C. § 16915(a).

Mulverhill argues that the district court plainly erred in accepting his guilty plea to failure to register as a sex offender, in violation of § 2250(a), because, using a categorical approach, neither of his two convictions under California Penal Code § 288(a) for lewd and lascivious acts with a child under 14 years old qualify as an offense "comparable to or more severe than" any of the listed federal statutes in the

definitions for Tier III or Tier II sex offenders. *See* 42 U.S.C. § 16911(3)–(4).[3] Mulverhill contends that he is a Tier I sex offender and was therefore not required to register as a sex offender during the time period set forth in the indictment because the 15-year period had expired. *See* 42 U.S.C. § 16915(a)(1).

We recently held in *United States v. Hill* that courts should employ a circumstance-specific approach—not a categorical approach—in determining whether an offender's conduct was by its nature a sex offense against a minor, thereby rendering the conviction arising from such conduct a "sex offense" under SORNA. 820 F.3d 1003, 1005 (8th Cir. 2016) (citing 42 U.S.C. § 16911(5)(A)(ii) and (7)(I)). Under the circumstance-specific approach, a court "examine[s] the 'particular circumstances in which an offender committed the crime on a particular occasion.'" *Id*. (quoting *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1691 (2013)). The court rejected application of the categorical approach to § 16911(5)(A)(ii) and (7)(I) of SORNA, which "look[s] simply at the statute underlying [the] conviction to determine whether its elements show categorically that it is a sex offense against a minor." *Id*.

In *Hill*, we had no occasion to address whether a circumstance-specific or categorical approach applies to the three tier classifications set forth in § 16911(2), (3), and (4). We, however, note our sister circuits' admitted difficulty in answering this question. *See, e.g.*, *United States v. White*, 782 F.3d 1118, 1130 (10th Cir. 2015) ("Our review of Mr. White's tier classification is complicated by the fact that the term 'offense' as used in 42 U.S.C. § 16911 is ambiguous."); *United States v. Forster*, 549 F. App'x 757, 767 (10th Cir. 2013) (unpublished) ("However, it is far from clear whether a categorical approach should be applied in the SORNA context." (citations omitted)); *United States v. Stock*, 685 F.3d 621, 628 (6th Cir. 2012) ("Admittedly, there was (and remains) some doubt about the extent to which Guidelines § 2A3.5(a)

---

[3]Mulverhill concedes that he is a "sex offender" under SORNA. *See* 42 U.S.C. § 16911(1).

directs district courts to look beyond the mere fact of a prior sex-offense conviction and into the specific factual circumstances of that offense.").

Here, we need not wade into the quagmire of which approach applies to the three tier classifications set forth in § 16911(2), (3), and (4). Even assuming that the categorical approach does apply, we conclude that the district court committed no plain error by not applying that approach to Mulverhill's prior convictions to determine his appropriate tier classification. We advance two reasons for this conclusion. First, during his change-of-plea hearing, Mulverhill agreed with the government's recitation of the facts that although he was required to register as a sex offender, he had failed to do so as of January 29, 2015. Mulverhill's admission constitutes a sufficient factual basis for the guilty plea.

Second, even if we consider Mulverhill's duty to register as a sex offender between June 19, 2014, and January 30, 2015, as a purely legal question, the district court committed no plain error in not applying a categorical approach to Mulverhill's California convictions. This is so because (1) we lack controlling precedent on the question of whether a circumstance-specific approach or categorical approach is applicable to the three tier classifications set forth in § 16911(2), (3), and (4); (2) our *Hill* decision indicates that such an approach *does not* apply in other subsections of the same statute; and (3) our sister circuits have had difficulty in determining whether the circumstance-specific or categorical approach applies to § 16911(2), (3), and (4). *See Fed. Crop Ins. v. Hester*, 765 F.2d 723, 727 (8th Cir. 1985) ("Because of the lack of controlling precedent within the Eighth Circuit and the split of authority among other courts, we decline to hold that the district court committed plain error in instructing the jury as to the preponderance of evidence standard.")

B. *Total Offense Level*

Mulverhill next argues that the district court plainly erred in using a total offense level of 23 instead of 21 based on the PSR's inadvertent error of assigning to him a total offense level of 23.

The government concedes that "the total offense level was 21" and that "the district court mistakenly applied a total offense level of 23." Nonetheless, it argues that Mulverhill cannot show a reasonable probability that he would have received a lesser sentence but for the alleged error. We disagree.

The Guidelines range for a total offense level of 23 with a criminal history category of I is 46 to 57 months' imprisonment; by contrast, a Guidelines range for Mulverhill's *correct* total offense level of 21 with a criminal history category of I is 37 to 46 months' imprisonment. "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez*, 136 S. Ct. at 1345. Here, Mulverhill "need not make a further showing of prejudice beyond the fact that the erroneous guidelines range 'set the wrong framework for the sentencing proceedings.'" *United States v. Tegeler*, No. 15-2911, 2016 WL 3057789, at *3 n.3 (8th Cir. May 31, 2016) (unpublished per curiam) (quoting *Molina-Martinez*, 136 S. Ct. at 1345).

Nonetheless, the government argues that part of the sentencing colloquy in which the district court "contemplated aloud a situation where it would have exceeded the Guidelines" indicates that no reasonable probability exists that Mulverhill would receive a lesser sentence. We recognize that "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist. The sentencing process is particular to each defendant, of course, and a reviewing court must consider the facts and circumstances

of the case before it." *Molina-Martinez*, 136 S. Ct. at 1346 (citation omitted). The present case is not a situation in which the government has shown "that the court 'would have arrived at the same term of imprisonment absent the procedural error.'" *Tegeler*, 2016 WL 3057789, at *3 n.3 (quoting *United States v. Henson*, 550 F.3d 739, 742 (8th Cir. 2008); citing *United States v. Sanchez-Martinez*, 633 F.3d 658, 660–61 (8th Cir. 2011); *United States v. Woods*, 670 F.3d 883, 887 (8th Cir. 2012)). The district court made no affirmative statements or indications of its intention to impose the same sentence even if Mulverhill's total offense level were lower.

Accordingly, we find that the district court plainly erred in calculating Mulverhill's total offense level as 23; therefore, Mulverhill is entitled to resentencing under a correctly calculated Guidelines range utilizing a total offense level of 21.

### III. *Conclusion*

Accordingly, we vacate Mulverhill's sentence and remand for resentencing.

_____